UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11735-GAO

STERNGOLD DENTAL, LLC,
Plaintiff,

v.

HDI GLOBAL INSURANCE COMPANY,
Defendant.

OPINION AND ORDER
September 29, 2018

O'TOOLE, D.J.

The plaintiff, Sterngold Dental, LLC, (Sterngold) manufactures and sells dental products. It purchased a commercial liability insurance policy from the defendant, HDI Global Insurance Company (HDI), providing coverage against, among other things, "personal and advertising injury liability." The policy was in effect for calendar year 2016.

I. **The Policy and Underlying Claim**

Pursuant to the policy, HDI agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies," and to "defend the insured against any 'suit' seeking those damages." (Compl., Ex. A, Commercial Lines Policy, 20 (dkt. no. 1-1).) The policy defines "personal and advertising injury" in part as follows:

"Personal and advertising injury" means injury . . . arising out of one or more of the following offenses: . . .

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Id. at 29.) The policy defines "advertisement" as "notice that is broadcast or published . . . about your goods, products or services for the purpose of attracting customers or supporters," including such notices "placed on the internet or on similar electronic means of communication." (Id. at 27.)

There is also a pertinent exception to the policy coverage. Section I(B)(2)(*i*) of the policy contains an intellectual property exclusion clause ("IP Exclusion"), which provides that, subject to certain limited exceptions, "This insurance does not apply to: . . . 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (Id. at 21.)

In May 2016, Sterngold was sued by Intra-Lock International, Inc. ("Intra-Lock"), another company in the business of selling dental products (the "Intra-Lock Action"). The suit concerned Sterngold's purported infringement of Intra-Lock's patents and trademarks. Count III of Intra-Lock's complaint, the only claim relevant here, alleged that "OSSEO" marks used by Sterngold were infringing the registered "OSSEAN" trademark that Intra-Lock used for its patented version of the same product. Intra-Lock specifically alleged that "Sterngold had begun using the confusingly similar marks OSSEO™ and OSSEOs™ with osseointegrative dental implant coatings in internet advertising," and that its use of these marks "deceived third parties as to the affiliation, connection or association of Sterngold with [Intra-Lock] and as to whether or not [Intra-Lock] has anything to do with the origin, sponsorship, or approval of the goods." Compl. ¶¶ 33–34, Intra-Lock Int'l, Inc. v. Sterngold Dental, LLC, No. 16-cv-80699-WJZ (S.D. Fla. May 3, 2016), ECF No. 1.

Sterngold tendered defense of the Intra-Lock Action to HDI. HDI denied coverage and refused to defend Sterngold. Sterngold and Intra-Lock ultimately settled the case. Shortly

thereafter, Sterngold requested that HDI indemnify it for the damages it was obligated to pay in connection with the settlement and dismissal. HDI again refused.

Sterngold commenced this action seeking a declaratory judgment that HDI had a duty to defend or indemnify it in the Intra-Lock Action, as well as damages.[1] HDI has responded by moving to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

**I.     Discussion**

All Sterngold's claims are premised on its allegation that HDI breached its obligations under the policy because Count III of the Intra-Lock Action, for trademark infringement, triggered coverage. HDI responds that the Intra-Lock action did not allege an injury covered under the policy. The parties here do not dispute the general facts of the case or point to any ambiguity within the terms of the policy. Their disagreement pertains only Count III of the Intra-Lock complaint and whether the facts alleged therein assert a covered claim.

    A.     Applicable Legal Standards Insurance Policy Coverage

Under Massachusetts law, an insurer has a duty to defend when allegations against its insured in the underlying complaint are "reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010) (citing Ruggerio Ambulance Serv., Inc. v. National Grange Mut. Ins. Co., 724 N.E.2d 295, 298 (Mass. 2000)). The question turns on "what an objectively reasonable insured, reading the relevant policy language would expect to be covered." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). Provisions in the policy

---

[1] In addition to the declaratory judgment, the complaint asserts claims for breach of contract, breach of the duty of good faith and fair dealing, bad faith, negligence, and unfair or deceptive acts or practices, Mass. Gen. Laws Ch. 93A, § 11.

3

susceptible to more than one rational interpretation are construed in favor of the insured. Merchants Ins. Co. of N.H. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 8 (1st Cir. 1998).

If the insured meets this initial burden of establishing the possibility of coverage under the policy, the burden then shifts to the insurer to prove the applicability of any exclusionary provision. Saint Consulting Grp., Inc. v. Endurance Am. Specialty Ins. Co., 699 F.3d 544, 550 (1st Cir. 2012) (citing Highlands Ins. Co. v. Aerovox Inc., 676 N.E.2d 801, 804 (Mass. 1997)). Insurers have no duty to investigate or defend when the relevant allegations are "specifically excluded from coverage," Brazas, 220 F.3d at 4, but they must establish that an exclusion applies to all potential liability based on the facts alleged in the underlying complaint as a matter of law. Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 958 N.E.2d 853, 862 (Mass. App. Ct. 2011); see Saint, 699 F.3d at 550; see also Finn v. National Union Fire Ins. Pittsburgh, 896 N.E.2d 1272, 1275 (Mass. 2008) ("The interpretation of an exclusion in an insurance contract presents a question of law.").

### B. Documents Considered

As a preliminary matter, Sterngold argues that the Court may not consider any allegations from the Intra-Lock complaint apart from those included in its own complaint. This is plainly incorrect. Courts may consider certain extrinsic documents when ruling on a motion to dismiss without converting it to one for summary judgment, including documents the authenticity of which are not disputed by the parties, official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013). Where, as here, the complaint's factual allegations are "expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a

4

motion to dismiss under Rule 12(b)(6)." See Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998); accord Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014). Furthermore, Massachusetts law specifically requires courts to consider the underlying complaint in determining whether there is a duty to defend. See, e.g., Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc., 820 F.3d 36, 41 (1st Cir. 2016); Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 991 N.E.2d 638, 641 (2013). Sterngold cites no authority to suggest that this consideration is limited to only those portions of the underlying complaint which the plaintiff has chosen to include. Accordingly, the Court considers the Sterngold complaint, the insurance policy attached thereto, and the Intra-Lock complaint.

C. Scope of Policy Coverage

HDI Contends that the allegations in Count III of the Intra-Lock arise out of trademark infringement and are therefore precluded from coverage by the IP Exclusion. The full text of the IP Exclusion reads:

> **This insurance does not apply to**: . . .
>
> **"Personal and advertising injury" arising out of the infringement of** copyright, patent, **trademark**, trade secret or other intellectual property **rights**. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(Compl., Ex. A, Commercial Lines Policy, 21 (emphasis added).)

The first sentence of the exclusion unambiguously states that "'Personal and advertising injury' arising out of the infringement of . . . trademark . . . rights" is an injury to which the insurance "does not apply." The phrase "arising out of" is broadly construed by courts within the Commonwealth to include a wider range of causation than the concept of proximate causation in tort law, more akin to "but for" causation. Bagley v. Monticello Ins. Co., 430 Mass. 454, 458–59,

5

720 N.E.2d 813, 817 (1999); accord Brazas, 220 F.3d at 7. There is no question that on its face Count III of the Intra-Lock complaint alleges trademark infringement.

Sterngold argues that the second sentence of the provision creates an exception to the first sentence—i.e. the use of another's "advertising idea" in the insured's "advertisement" and that its use of the OSSEAN trademark falls within this exception because trademarks are "advertising ideas." These propositions are clearly contradicted by a plain reading of the policy.

In the first place, the second sentence explicitly pertains only to the phrase "other intellectual property rights" in the first sentence. It clarifies that the use of another's "advertising idea" in the insured's own "advertising" is not one of the "other intellectual property rights" excluded by the first sentence. It does not limit the categorical exclusion of trademark infringement claims. If trademarks and advertising ideas were interchangeable under the policy, as Sterngold seems to argue, the specific exclusion of trademark infringement claims by the first sentence of the provision would be meaningless because the trademark would nevertheless be an "advertising idea" excepted from the exclusion by the second sentence and thus covered—an absurd, rather than sensible, reading of the provision. The IP Exclusion draws a clear distinction between "trademarks" and "advertising ideas," and it is harmonious within the context of the policy when this distinction is recognized.

Sterngold's second argument is similar to its first. It argues that the OSSEAN mark is a "slogan" such that its use of that mark qualified as "infringing upon another's . . . slogan" in its "advertisement." A slogan has variously been defined as a "distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase." Cincinnati Ins. Co. v. Zen Design Grp., Ltd., 329 F.3d 546, 556 (6th Cir. 2003) (quoting Random House Unabridged Dictionary 1800 (2d ed.1993); see CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 78

6

(2d Cir. 2013) (defining slogans as "*phrases* used to promote or advertise a house mark or product mark, in contradistinction to the house or product mark itself." (emphasis in original)). This is in contrast to a trademark, which functions as a source-identifier of goods or products, distinguishing the trademark holder's goods from those sold by others. 15 U.S.C. § 1127; Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12–13 (1st Cir. 2008). As stated above, the allegations in Count III of the Intra-Lock complaint sketch only claims of trademark infringement, and cannot reasonably be construed as a claim for slogan infringement. The OSSEAN mark is not a slogan but a source-identifying trademark. See Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 619 (2d Cir. 2001).

## II. Conclusion

Because HDI has established that it had no duty to defend Sterngold in the Intra-Lock Action, its Motion to Dismiss for Failure to State a Claim (dkt. no. 6) is GRANTED, and the case is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>United States District Judge